Good afternoon and may it please the court. Sonam Henderson for the appellant Antoine Gerald. I'm planning to reserve three minutes for rebuttal and I'm going to begin by discussing the competency issues and then I'm hoping to get to the sentencing issue at the end. So as this court is aware we have a number of different competency arguments but the overall question raised by these competency issues here is whether Mr. Gerald is, as this court has put it in other cases, simply a fool whose actions and poor decisions can be justifiably held against him or whether he's someone whose obvious mental illness and limitations render him sufficiently vulnerable that his trial, especially with no representation, offended due process and debased the dignity of the proceedings. And we're obviously arguing the latter and that that starts with the issue of trial competency. And so trial competency requires that he have both a factual understanding of the proceedings. Mr. Gerald here had neither. In terms of factual understanding, before trial, it came out that he did not know that there was an attempted murder charge. He didn't know about the more serious of the two charges against him. This is after he's already been found once competent to stand trial and to represent himself and he didn't know that. He didn't know about that attempted murder charge despite having had his charges explained to him in open court on two prior occasions when he said he didn't understand his charges. And when the district court realizes on the eve of trial that he doesn't know about the attempted murder charge, all it did was have the government read the charge for a third time. It made no attempt to go back and make sure that Mr. Gerald actually finally understood the charge, even though on the previous two occasions when it was explained to him, somehow it went in one ear and out the other. There's no reason in the record to think that Mr. Gerald understood the charge, given that at no point during trial or sentencing does he make any reference to that charge or any arguments against it. I want to ask you a question about that because the judge held two competency hearings and had an expert report in front of him that opined, no report to the contrary, that Mr. Gerald was competent. And the report seemed to suggest that some of his behavior was volitional rather than caused by mental disease. We reviewed the judge's competency determination, I think, for abuse of discretion because it's a factual determination. Everything you say makes a lot of sense to me. And had the judge found to the contrary, I'm not sure I would be in a position to say he was abusing discretion here. Yes, because, Your Honor, it's, I mean, going to the report and saying, well, the report says that he's, you know, he understands his charges. The psychologist who wrote the report clearly didn't actually know Gerald's charges. She wasn't in a position to determine that he understood his charges because she thought his only charge was the assault charge. So the court, the court is not permitted, I mean, even where there's no other report, the court has to, has to look at the report and consider whether it's reliable. And here, there are, there are lots of problems that go through in the brief with the report in terms of the inadequacy of its, of the, of the information on which it's based, that this diagnosis of paranoid personality disorder had required the psychologist to identify a stable long-term pattern going back to adolescence that's not better explained by another psychological condition. And she makes that diagnosis without any records predating his arrest three months earlier, without interviewing his family, and without the benefit of any formal psychiatric testing. And she, she's also relying on inaccurate information. As I've just described, she, she seems to think his only charge is the assault charge. So when she says he understands his charges, she, she is missing this thing that the court sussed out, which is that he doesn't actually, he doesn't actually know he's been charged with attempted murder. And, and the... I have, I have one question. Is there a duty for the psychologist to interview family members or look at prior records or do all the things that you suggested? I've not seen a case that says that. I, I don't believe there's a, there's a legal duty. I mean, the, the, what the, what the psychologist is, what the court needs to do is make sure that the psychologist's report is reliable. What I'm saying here is, this is a condition that requires a long arc of history to, to properly diagnose, and that, that's clear from the face of the report, and it, and it's just not there. And, and it, I mean, the same thing with testing. If you're going to eliminate other conditions, it'd be really nice to have some, like, psychopathological testing, but the court, the, sorry, the psychologist throws it out here. So there's, there's just not, there's just not that much information to go on other than the psychologist's own impressions. And we have a psychologist, she doesn't tell us how long she meets with Mr. Gerald, or on how many occasions, so we don't even really know the basis of, of her. Can I, can I get, I'm, I'm sorry. This is one of the problems with Zoom. So, finish your answer, if you had more to say. No, no, I think, please, please. Okay. So here's, here's what concerns me about this. To be competent, one must understand, we're not talking about the phoretorite for a moment, we're talking about competency to stand trial. You must understand the nature of the charges against you. Is it also required that you understand how they're characterized? In other words, Mr. Gerald clearly understood he was on trial because he went to the post office and stabbed somebody. He may or may not have known the distinctions between assault and assault with intent to kill, but he understood the nature of the charge, which is that he was being charged because he decided for whatever reason that he had to take revenge against this postal worker. Is it, is he not competent to stand trial because he may not understand the charges more serious than he thinks? I believe so, yeah. I mean, he needs to understand the proceedings. And I think understanding them factually and rationally certainly means that he needs to understand the seriousness of, of the charges. And I think here in particular, attempted murder is, is, is something that doesn't just I mean, it isn't just serious, it also sounds serious. A layman might think, well, assault, what's that? But attempted murder, everybody knows that attempted murder is a really big deal. And, and if he doesn't know that that's what he's charged with, that's, that seems to me to be a big problem in terms of his factual and rational understanding. And I want to push back on that. One of the times he was asked about that, though, he said, I didn't remember the attempted murder because he was going off of the charges off of the initial complaint, which to me seems like a pretty sophisticated understanding of, of criminal procedures. Wouldn't you agree with that? No, not at all, Your Honor. It's, it's a completely irrational understanding of, of criminal procedure. You get initially charged with something, then you get indicted. The initial charges don't matter. It's the indictment that matters. If you, if it was reasonable for a defendant or an attorney, since he's acting as his own attorney to just work from the complaint as you go through the trial process, I mean, you'd end up with very confused proceedings. It's, to, to, to be sort of rationally, factually and rationally on top of what's going on, he needs to understand that this is, this is not just an assault charge anymore. This has turned into an attempted murder. Doesn't an assault, I'm sorry, doesn't assault, I'm sorry about that. Doesn't assault and second degree murder, I'm not sure about this, do they have the same guidelines range? Don't they use the same guidelines? I, I believe they get directed to the same guideline. I'm not sure if you're only convicted for assault with a deadly weapon. If, if, for instance, the heightened base offense level, that's the, the source of our sentencing complaint. If, if that could be applied, I don't, I'm not sure about that. The question I had, Mr. Henderson, is this, and I don't want to make your competency determination here would not be particularly concerning to me if Mr. Gerald had been represented by you or Abel, or Abel counsel. So isn't the real, isn't your real concern that he represented himself? In other words, it seems to me he understood what the charges were about. He may not have understood the technical elements of each offense. The, the real problem, the thing that makes this case more concerning, of course, is that he exercised his forerunner rights. Um, and, you know, I could make lots of comments about forerunner rights, but every time we tell a defendant he can't exercise them, the Supreme Court says, no, you're wrong. He gets to exercise them. So isn't it? Isn't it the combination of the two things here? That's the real problem. I, yes, I do want to push back a little on this idea that he really fundamentally understood his charges because he's out there calling the charges petty, Your Honor. He's, an attempted murder charge is not petty. And he, he explains that as a, you know, oh, well, I'm talking about the underlying dispute, but he's using that pettiness as a reason to, to want to fire his lawyer. He thinks his lawyer must be in cahoots with the government because this petty matter is taking too long. So he's really conflating his mail fight, you know, his, his issues with not getting his mail with attempted murder. And that's, that's just not a rational understanding of his charges. I know you wanted to deal with the sentence. So I wanted to remind you. Oh, yeah. Well, I'm going to, I'm going to skip forward a little bit to two things. I would ask the court both regarding sentencing, but slightly different. Even if, even if the court's not convinced that the district court erred on the issues of competency and competence to represent himself, and even if the court's not convinced that the district court erred by not revisiting competency at trial, I really urge the court to look carefully at whether the district court erred by not revisiting competency at sentencing. Because at sentencing, we really just see him frozen. I mean, he's, he's here, he's facing 20 years, he's been convicted of attempted murder, and he just does, he just does nothing to support himself. And, and while he's doing nothing to support himself, the court is observing that he's obviously mentally ill. And that, that's just very concerning. And, and to me, I just remind the court that passivity can indicate that someone's actually incompetent. They're just masking him by doing nothing. I think, I think it's pretty clear that's what happened here. Was there, was there something particular at sentencing that you're referring to, or it was just more the lack of attention to some, what, what, what, what, what, what at sentencing would have caused the district court to decide everything I've kind of thought about this person up until now may be off? Oh, it's, it's not so much that everything's off. It's that everything I've thought about him needs to sort of move over a slot from clearly mentally ill to incompetent because he's, he's, he doesn't file any sentence in paper. He makes one meaningless objection to the PSR after being prompted by the court. He makes no arguments. He doesn't allocute. Was there some other, was there some other kind of abnormal behavior beyond this passivity that you're discussing? No, it's, it's the extreme passivity. Okay. Just for the sentencing issue, in calculating Gerald's guideline range, the district court applies a six level higher base offense level for the first degree murder. In doing so, it's erroneously using the definition of second degree murder instead of the definition of first degree murder as murder committed with malice of forethought. This court's cases say that second degree murder, not first degree murder. Then when it's applying the facts to, to the, the facts of the case to the standard, it says, well, this was first degree murder because it was willful and deliberate. And again, this course cases say, willful and deliberate is a synonym for malice of forethought. So again, second degree murder. So let me, let me ask what I think is the tough question here on this point. The PSR may misstate the standard. Not clear what standard the judge applied because she didn't say. But can you meet the clear error requirement? There seems to be lots and lots of evidence of premeditation here. I don't need to meet a clear error requirement. It would be, it's, it's, it's plain error and the plain error is the legal error. That's what I I'm sorry. Okay. Sorry. So the plain error is the legal error. And then to meet. Okay. But tell me how the district court made a legal error. I understand that PSR may have made a legal error. Tell me how the district court made a legal error. He agreed with the PSR and adopted it. I mean, that that's her analysis. She doesn't do any analysis of her own. She takes the PSR analysis, PSR analysis as well. I believe this, and I believe there's case law. I'm sorry. I don't have a site that said basically saying that where the court adopts the PSR. It's that's, that's. The PSR did announce the correct rule. It mentioned the premeditation, didn't it? It did not announce the correct rule. It jumbled, it jumbled the statutory language so that it mentions premeditation, but it says that first degree murder is the unlawful killing of a human being with malice of forethought. That's one part of its definition. And every murder perpetrated by lying and waiting, willful, deliberate, malicious, and premeditated. So it's, it's, it's misdefining it. It jumbles the language and it misdefines it. And then when it applies it again, it's saying that it's willful and deliberate, which is under this court's case law, not premeditation. I have very little time left. I'd like to hold on to it for a short rebuttal. Well, we'll, we'll try to give you a little bit of time for a rebuttal because I still have one more question. I'm not sure. Let's assume it was legal error. Hmm. Don't you still have to show that you were prejudiced by the legal error because nobody objected to it below that, that, that a reasonable, that there's a reasonable chance that the finder of fact would come out differently. I do need to show that. And I think what we see here is, I mean, premeditation is cold-bloodedness, calm, a moment, maybe a very short moment, but a moment of calm reflection, understanding your intent to kill and considering it. Here, the witnesses described nothing like that. He's agitated. He's going crazy. He's out of control. Even the government in its sentencing memo says that he snapped when he saw Muradji attacking someone in a blind rage is not premeditation. That's, that's, I mean, something else. But he had gone to the post office with a weapon after one of the postal employees had just recently testified against him in another case. So why is that not evidence sufficient of evidence of premeditation? Again, I'm not, I don't need to argue sufficient evidence. I'm arguing only that the court could have reasonably come to a different conclusion. And, and it, the issue there is that he, he says in the phone call, he's going there to get his mail and he's bringing the knife because he doesn't like that they're lying to him. And he's, he's there to show that he's serious. So there's also evidence that he's bringing the knife for some purpose other than attacking Muradji. And he's trying to scare the postal employees and actually giving him this mail that he's been coming and trying to get repeatedly over, over a course of time. Thank you. And we took you over. We'll give you a little bit of time for rebuttal. I appreciate that. Ms. Small. Good afternoon, your honors. May it please the court. Carolyn Small on behalf of the United States. There's really no question that the defendant did show signs of mental illness, but he was evaluated by a forensic psychologist who concluded that his mental illness would not impair his ability to understand the nature and the consequences of the court proceedings against him. And also that, that mental illness wouldn't impair his ability to assist counsel in his defense or to represent himself. And that opinion was consistent with the defendant's behavior in with the district court. He was polite and well-behaved during all of his court proceedings, which he knew he had to be to get what he wanted, which was to represent himself. So based on his record, it was not clearly erroneous for the district court to find the defendant competent to stand trial and to represent himself as with his constitutional right to do. I, I think there were a number of times in the record that the defendant demonstrated that he understood the proceedings. He, right from his initial appearance, when he was expressing a desire to represent himself, he argued that he should be released on bail. He not only, he made, he made a good, as good of an argument as he could have. He applied the appropriate standard. He said he was not a danger because he'd never engaged in this sort of behavior before. He addressed the government's arguments about his non-appearance in prior, in prior state proceedings and said that had taught him that, you know, this is serious when they say to appear. So he not only understood what was happening, he was able to appropriately apply the legal standard to his case. He also explained at his second competency hearing the distinction between advisory and standby counsel, which was a topic that the parties had discussed at his first competency hearing when deciding whether the public defenders were going to capacity. But he demonstrated throughout that he could retain information and apply it in later proceedings with respect to the argument that he, the day before only recounted the assault with a deadly weapon charge and not the attempted murder charge. There were multiple times in the record that he demonstrated an understanding of the charges. For example, in the competency evaluation, the psychologist noted that the defendant, when asked about the maximum possible penalties, he said 20 to 40 years. He thought that the plaintiff, the government had mentioned in court, which was accurate. That's, that is what the government had said in court were the maximum penalties, 20 years maximum per charge for a total, a potential total of 40 years combined. And so that did account for the attempted murder charge. He also, the defendant during his trial, he cross-examined one of the witnesses about the fact that the witness did not hear the defendant tell the victim right before he attacked him that he was going to kill him for lying on him in court. That's a question that's relevant to the attempted murder charge as well. So it, there's substantial evidence in the record that the defendant was processing the information that was happening around him. He was engaged. He understood what was going on and he understood the nature of the proceeding. It's also significant that his defense attorney, who was appointed to represent him for purposes of the competency proceedings, told the court, I do think he understands the charges. I think he understands why he's here in the courtroom. That's at ER 48 during the competency hearing. Let me ask you the same question. Let me ask you the same question, Mr. Henderson. I think the record has substantial evidence in it that he understood why he was in the courtroom. He understood he was there because he engaged in a knife attack on a post office employee. What the record is less clear about is whether he understood what charges were being brought against him because of that, which is to say, it's less clear that he understood that he was being charged with attempted murder. Let's assume he didn't understand that just for purposes of the question. Does that matter? I'm not aware of a case that requires the defendant to under, to recount with the specific charges that are brought. I mean, the cases talk about the defendant's understanding of the nature of the proceedings that are being brought against him and the cases require that the defendant be given notice of the specific charges, but I'm not, which the defendant clearly was given notice of the charges multiple times, I'm not aware of cases that would require him to read back or recall the exact charges. And as the court has pointed out, these are charges that arose from the same conduct. The defendant clearly understood the conduct that was at issue in the case. It's not as though this is a case where his inability to recall from memory the attempted murder charge meant that he was completely overlooking some portion of the conduct that was at issue. And he did provide an explanation that's reasonable when asked by the district judge, you know, we're on the eve of trial, why are you only remembering the assault charge? He said, that's what I was arrested on. And that's accurate. The complaint did only talk about the assault charge. It's not unreasonable for a lay person to think that those are the charges. I think in state proceedings, I don't know how common it is to have this procedure where additional charges are added in a later charging document. And he's really only dealt in state proceedings. So that's a nuanced legal concept in terms of what the operative charging document. And it's not unreasonable for him to have focused on the documents that he received when he was first arrested. Can I go back to Judge Bumate's question? Was the penalty range expanded because of the attempted murder charge? The statutory maximum was increased because each charge carries a 20-year statutory maximum, which means both charges together would have carried a 40-year maximum sentence. The guidelines range, I don't know off the top of my head what the guidelines range would have been just for the attempted murder charge, or just for the assault charge. So remind me, the sentence in this case was how many years? 14 years. 14 years. Could he have received 14 years on the assault charge? I don't. I would have to do the calculation. I don't know. Yeah, I think not. And that's really the question I'm asking. So not understanding that you were in greater jeopardy of a longer prison sentence because of the second charge is the issue I'm trying to focus on. Well, I guess I would say to that, so the district court would have had discretion. So whether the guidelines range would have included a 14-year sentence just for the assault charge, I don't know. Of course, given the statutory maximum, the district court could have sentenced him up to 20 years. Yes. Exercising discretion to go above any guidelines range that was there. So he could have been sentenced to 14 years in theory. I just don't know whether the guidelines, what the guidelines range would have been. He faced the jeopardy of a 14-year sentence on the assault charge. He may not have faced a, if that were the only charge, that might not have been the outcome is what you're saying. Right. So can I now ask you about the sentencing? And let me, so I'm not hiding the ball on this. Let me tell you what concerns me and see if you can respond to it. The PSR is to put it mildly, not a perfect statement of what constitutes first degree murder. It's probably not inaccurate as much as it's under inclusive. And the judge doesn't make any specific findings about premeditation. She just simply says, I adopt the PSR. So why isn't there a legal error here? Put aside for a second whether or not it meets the plain error standard. Why isn't there a legal error here? Well, first, I think that I don't see an error in the PSR's recounting of what's required. So it seems as though counsel is saying that what the PSR says is that first degree murder is the unlawful killing of a human being with malice of forethought, but that's not what the PSR says. The PSR says, and it is a little confusing. It says the language of the statute defines the unlawful killing of a human being with malice of forethought. So, and that tracks the statute, which first defines murder generally, all murders. So the statute says that the unlawful killing of a human murder is defined as the unlawful killing of a human being with malice of forethought. Then the statute goes on to say, and the PSR goes on to say, and every murder perpetrated by lying in wait or any other kind of willful, deliberate, malicious and premeditated killing is murder in the first degree. So I think the PSR is consistent with the statute, which is that it's first defining murder generally, which could be first or second degree murder. And then it's going on to define first degree murder specifically. So I don't think that there was any error in the PSR in the first instance. So I don't think there was any legal error. Let me read you the part of the PSR that concerns me. It's the part that says this is first degree murder because the object of the offense would have constituted first degree murder had it not been stopped, as it would have resulted in murder that was willful and deliberate. That's under-inclusive, isn't it? I mean, it would also have to be premeditated. Right. I agree that in applying the statute to the facts of the case and recounting that the PSR did not include premeditation and the analysis did seem under-inclusive. So to put it differently, if I can put it differently, it may have stated the correct legal standard as a preface. But then when it got to this case and tried to apply it, it may have made an incomplete or incorrect statement. And then the judge doesn't make a separate analysis. So taking it that way, is that legal error? I don't think that's legal error. I think the PSR sets forth the correct legal standard and that's the legal issue. And then the question is whether the facts of this case meet that legal standard. And so that sort of takes us into clearly erroneous standard and whether it was clearly erroneous to find premeditation, willful, deliberate. And so I think that's where we are once the PSR initially sets forth of the legal standard. I don't think the court is bound by the PSR's analysis. I think now looking at the factual issue of whether the evidence, you know, there's a plausible basis in the record for finding premeditation. Now there is significant evidence in the record that I think the court can look to. I don't think it's bound by the PSR's analysis of what those facts are. I agree with you. I agree with you. And let me just say that if the judge had said in this case, I've read the PSR but I find premeditation, recounting all the facts that I'm sure you could recount to me, this would be an easy case. I'm trying to figure out what we do in the case where the judge says simply I adopt the PSR without indicating that she's done the separate analysis that you're now giving us. Does that matter? I don't think it matters because we're on plain error review. So I think the court is looking to see, you know, first again, whether there was error, whether it was clear or obvious and whether it affects substantial rights. So I think given that standard, the court is not, I think the court can look at the record as a whole and find that the evidence support that would support that the weeds of this issue since it wasn't ever raised. So that is a reason for plain error review because oftentimes that means that the district court hasn't addressed those issues with great specificity. Counsel, I have a question. In your briefing here, you don't cite the fact that he said, I'm going to kill you. You lied to me in court as one of the reasons why premeditation, the lack of a finding premeditation is harmless. Do you think that that's not evidence of premeditation? Oh, no, I do. And if that wasn't cited as a reason in my brief, I apologize. And that was an oversight. That is absolutely evidence of his premeditation. He, it seemed he, he went to the post office and he didn't just take up a knife and attack anyone who couldn't help him find his mail. He focused in on this victim who had testified against him just a couple of days earlier. And then when he sees this person, he says, I'm going to kill you. And then that's before he attacks. So, uh, absolutely. I think that that is evidence further evidence. Was it before he attacked her during the course of the attack? I thought from the record, it was during the course of the attack that he said, I'm going to kill you. The evidence was that he sees the victim coming in from break and says, I'm, and it all happens very quickly, but he says, I'm going to kill you light on the end court. And then rushes towards him, hits him a few times and then pulled out the knife was the evidence. Yeah. I'll look at the record again. I just, my impression was that it was while they were grappling or in this, in this tussle that he said, I'm going to kill you, but I may be wrong. Again, it did all happen very quickly. Do any of my colleagues have further questions for Ms. Small? If not, why don't we give Mr. Henderson a couple of minutes for a rebuttal? Yeah. Thank you. Thank you. Um, so just a couple of things in terms of what he does at the post office. When he gets there, he he's doing also, he's asking for his mail. He doesn't go there and immediately look for the victim. He's again there with his confirmation and he's asking people to help find his mail and he pushes into the back as he's done on other occasions. And he's looking around for his mail and only when Marajan comes in, does he snap. So the idea that he's just there for Marajan, I don't think fits the facts. Um, also it it's the analysis isn't just whether the facts support the district court's finding again, it's whether there's a reasonable probability that the court would have come to a different conclusion given the right standard. And I think there is that probability here again, looking at all this evidence that he was out of control and going crazy. Um, going back to, um, uh, the government pointed out all these instances in which he's, you know, uh, making bail arguments, being polite, et cetera. Um, none of those go to whether he factually and rationally understood his charges. And again, I'm going to point the where he's not understanding no attempted murder. And I'm also going to note that he, one of the condition, one of the aspects of the condition with which he's, he's diagnosed is, is this inability to get out of preconceived notions, bending and warping the world to fit his preconceived notions. So he's not going to be irrational on every dimension, but where he's identified some preconceived notion, like that his case is petty or that he's not charged with diagnosis is correct. Um, and finally, just on the real notice issue on the notice of the actual charges issue, the cases say real notice of the charges is necessary as a fundamental point of view process. I can't see how notice could be important, but understanding and knowledge wouldn't be like it. Why would it matter if you get notice, if you're not going to, if you're not going to be able to take that notice in, if it just bounces off of you, the notice is a meaningless amount. Thank you. Thank you. I thank both counsel for their briefs and arguments in this case, and this case will be submitted.
judges: Hurwitz, Bress, Bumatay